# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ERIKA ANDERSON, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>    Defendant. | Case No. 2:22-cv-01214-GMN-NJK<br><br>**Order**<br><br>[Docket Nos. 42, 44] |

Pending before the Court is Plaintiffs' motion to compel. Docket No. 42. Defendant filed a response, Docket No 47, and Plaintiffs filed a reply, Docket No. 50. Also pending before the Court is Plaintiffs' motion to seal. Docket No. 44. Defendant filed a response to the motion to seal. Docket No. 48. For the reasons more fully discussed below, Plaintiffs' motion to compel is **GRANTED** in part and **DENIED** in part. Also for the reasons more fully discussed below, Plaintiffs' motion to seal is **GRANTED**.

Plaintiffs allege that Defendant violated the Fair Credit Reporting Act by failing to conduct reasonable reinvestigations in response to Plaintiffs' dispute letters. Docket No. 19 at 15. Plaintiffs now move to compel Defendant to respond to several interrogatories and requests for production. Docket No. 42 at 7, 9, 12-14. Plaintiffs seek this discovery both to prove their claims and to respond to Defendant's drafted but yet-to-be filed motion for Federal Rule of Civil Procedure 11 sanctions.[1] *Id.* at 2.

---

[1] In general, discovery relating to motion for sanctions under Federal Rule of Civil Procedure 11 should be allowed only in "extraordinary circumstances." *E.g.*, *Hall v. Marriott Int'l, Inc.*, 2022 WL 3718838, at *3 (S.D. Cal. Aug. 29, 2022) (internal citations omitted). However, because each category of discovery allowed is relevant to either parties' underlying claims or defenses, the Court need not address whether the instant case constitutes "extraordinary circumstances."

I.  STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). Relevance during discovery is broader than relevance at trial. *E.g., F.T.C. v. AMG Services, Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013). "The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019). Meeting that burden requires the objecting party to explain "how each of its objections is applicable, by providing the relevant standard for each objection and a meaningfully developed argument as to how the standard has been met." *Hinostroza v. Denny's Inc.*, 2018 WL 3212014, *1 (D. Nev. June 29, 2018) (citing *Green v. Bacca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005)). "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

II.  DISCUSSION

Plaintiffs seek to compel responses to multiple discovery requests. Docket No. 42 at 7, 10, 12-14. Many of these discovery requests overlap with one or multiple other of Plaintiffs' discovery requests. The discovery requests can be divided into 3 categories: (1) Plaintiffs' credit reports and related information; (2) the Consumer Data Industry Association Metro 2 Credit Reporting Resource Guide that was operative at the time they submitted their dispute letters; and (3) the identification of cases, deposition transcripts, declarations, and court filings relating to Defendant's post-bankruptcy discharge reporting and the *White v. Experian* settlement. *Id.* Given the discovery requests' overlapping nature, the Court will address the categories of information sought, rather than each individual discovery request.

1.  Plaintiffs' credit information

Plaintiffs ask the Court to compel the production of various portions of their credit information maintained by Defendant. Defendant primarily archives copies of transmitted credit reports in the "Fixed File Inquiry" ("FFI") and "Fixed File Return" ("FFR") formats. *Id.* at 9. Plaintiffs are seeking all FFIs/FFRs pertaining to them transmitted by Defendant since 30 days after Plaintiffs first sent their respective demand letters, as well as identification of any unarchived

transmitted credit reports and any "soft inquiries" for the same time period.[2] *Id.* at 10. Plaintiffs further seek to compel Defendant to identify the type of credit reporting product attributable to each FFI/FFR. *Id.*

Defendant submits that producing every FFI/FFR for each Plaintiff during the relevant time period would be cumulative and disproportionately burdensome.[3] Docket No. 47 at 7-8. Defendant submits that producing every relevant FFI/FFR would be cumulative because it has already produced two representative FFIs/FFRs for each plaintiff. *Id.* Plaintiffs submit that complete production of the relevant FFIs/FFRs would not be cumulative because each FFI/FFR is needed to fully evaluate Plaintiffs' damages. Docket No. 42 at 17. Plaintiffs further submit that relying on Defendant's representative FFIs/FFRs would allow Defendant to pick and choose what evidence it produces. Docket No. 50 at 6-8. Absent a protective order, a party must produce all documents responsive to a request for production that are in the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1); *see also* Fed. R. Civ. P. 26(c). Further, each FFI/FFR may contain new information relevant to Plaintiffs' damages. Producing each FFI/FFR for Plaintiffs during the relevant time period is, therefore, not cumulative.

Defendant further submits that this request is overly burdensome because "collecting FFIs/FFRs is a manual, multi-step process which requires individualized research into a specific consumer and specific inquiry" and that "[l]ocating and producing each of these FFIs/FFRs would take a significant number of resources and time which would be disproportionate to the needs of this case." Docket No. 47 at 8. Defendant does not articulate why obtaining each FFI/FFR would be disproportionately burdensome beyond this generalized statement. Conclusory or generalized assertions are not enough to support a claim that sought discovery is disproportionately burdensome. *See V5 Techs.*, 334 F.R.D. at 309 (citing *AMG Servs., Inc.*, 291 F.R.D. at 553).

---

[2] More specifically, "[t]he relevant time period for this request are [Plaintiff] Bagnate's inquiries after January 9, 2022; [Plaintiff] Brewster's inquiries after [] January 20, 2022; and [Plaintiff] Wade's inquiries after January 29, 2022." Docket No. 42 at 16.

[3] Defendant, by producing two FFIs/FFRs for each Plaintiff, has conceded the relevancy of the FFIs/FFRs. *See* Docket Nos. 42 at 16-17; 47 at 7.

3

Plaintiffs further seek the identification of the applicable credit reporting product for each produced FFI/FFR. Docket No. 42 at 18. Plaintiffs submit this information is relevant and necessary because, although they have a copy of Defendant's User Guide which is necessary to decode the FFIs/FFRs, the User Guide contains decoding instructions for multiple different credit reporting products. *Id.* Consequently, Plaintiffs cannot know which instructions to follow for any particular FFI/FFR, rendering any produced FFIs/FFRs useless. Defendant submits that Plaintiffs' request for the applicable credit reporting products "is emblematic of a prohibited fishing expedition." Docket No. 47 at 9. It submits that, because Defendant alleges that it never discloses balances of discharged accounts, the applicable credit reporting information is irrelevant to the instant case.

As discussed above, the contents of each FFI/FFR are relevant to either party's claims or defenses. Moreover, Federal Rule of Civil Procedure 34(a)(1)(A) requires that produced discovery be provided in a "reasonably usable form." *See also* Fed. R. Civ. P. 34(b)(2)(E) (providing further requirements for producing electronically stored information). Indeed, the drafters of Rule 34 contemplated that a responding party may have to go beyond the face of the request for production to ensure produced discovery is usable. Fed. R. Civ. P. 34, Advisory Committee Notes (2006) ("Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information"). Accordingly, Defendant must identify the credit reporting product applicable to each produced FFI/FFR.

Plaintiffs further seek to compel the production of any "soft inquiries" into their credit report and the identification of any inquiries that were not archived. Docket No. 42 at 17-18. Defendant does not challenge the relevancy of this category of discovery. *See* Docket No. 47 at 7-8. Defendant submits, however, that this request is cumulative of the other discovery requests relating to Plaintiffs' credit reports. Docket No. 47 at 7-8. As discussed above, the contents of every one of Plaintiffs' credit reports disclosed to third parties is relevant to the action. Accordingly, production of "soft inquiries" into Plaintiffs' credit history is not cumulative.

Defendant makes one passing comment that Plaintiffs are seeking "undefined records of 'soft inquiries.'" Docket No. 47 at 8. Plaintiffs use the term "soft inquiry" in relation to how the term is used in Defendant's User Guide. *See* Docket No. 42 at 17. "[E]pistomolgical nit-picking" is not a valid reason to avoid discovery. *Alvarado-Herrera v. Acuity*, 2022 WL 18108429, at *2 (D. Nev. Nov. 8, 2022) (citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 580 (9th Cir. 1992), and *F.D.I.C. v. Lewis*, 2014 WL 7330931, at *4 (D. Nev. Dec. 18, 2014)). Further, conclusory arguments are insufficient to avoid discovery. *See V5 Techs.*, 334 F.R.D. at 309 (citing *AMG Servs., Inc.*, 291 F.R.D. at 553). Because Plaintiffs use the term "soft inquiries" in reference to a document drafted by Defendant, Defendant cannot avoid this discovery on vagueness grounds. Accordingly, Defendant must produce every "soft inquiry" for Plaintiffs from the relevant time period. Additionally, to the extent it can identify such transmission, Defendant must identify any transmissions made during the relevant time period for which it does not have full archival information. This discovery is relevant to Plaintiffs' damages and whether Defendant destroyed evidence of its transmittal of inaccurate post-bankruptcy discharge account information to third parties.

2.  Metro 2 Guidelines

Plaintiffs seek to compel the production of the Metro 2 Credit Reporting Resource Guide that was operative at the time they submitted their dispute letters ("Metro 2 guidelines" or "guidelines"). Docket No. 42 at 18-19. The Metro 2 guidelines are maintained by the Consumer Data Industry Association and are an industry standard for transmitting consumer credit data. *Id.* at 18. Defendant contributed to the Metro 2 guidelines along with other credit reporting agencies and stakeholders in the consumer credit reporting industry. *Id.* Plaintiffs submit that Defendant must produce the Metro 2 guidelines because they are necessary to determine whether Defendant's reinvestigation was reasonable under the FCRA and to refute portions of Defendant's threatened Rule 11 motion. Docket No. 42 at 18-19. Defendant submits that it should not be compelled to produce the Metro 2 guidelines because they are not relevant, Plaintiffs already possess a copy of the Metro 2 guidelines, and the guidelines are not in Defendant's possession and control because only the Consumer Data Industry Association, not Defendant, has the authority to disclose the

5

guidelines. Docket No. 47 at 9. Plaintiffs reply that the copy of the Metro 2 guidelines in their possession predates their dispute letters and alleged inaccurate reports and is therefore not the operative copy of the guidelines for their claims. Docket No. 50 at 9-10. Plaintiffs further submit that the guidelines are routinely produced in other lawsuits. Docket Nos. 42 at 18; 50 at 10.

Plaintiffs submit that the Metro 2 guidelines are relevant to their claim that Defendant failed to reasonably reinvestigate their credit report disputes and to respond to Defendant's Rule 11 letter. Docket No. 42 at 18-19. Defendant does not dispute this submission. *See* Docket No. 47. Defendant instead submits that the guidelines are irrelevant because it "has produced the actual data transmitted in a credit report to third parties which shows that no balances were reported." *Id.* at 9 (emphasis omitted). Whether the balances reported by Defendant were accurate is an issue not now before the Court. What is before the Court is whether the Metro 2 guidelines are "relevant to any claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs' complaint claims that Defendant failed to reasonably reinvestigate their disputed credit reports. Docket No. 19 at 15-16. The Metro 2 guidelines are, therefore, relevant to either parties' claims or defenses and cannot be withheld on relevancy grounds.

Defendant submits that the Metro 2 guidelines are maintained by the Consumer Data Industry Association and that only the association can grant access to the guidelines. Docket Nos. 42-12 at 2-3; 42-14 at 1; 47 at 9. To support this contention, Defendant references the fact that "the CDIA website clearly states that only approved individuals can access the guidelines." Docket No. 47 at 9. Defendant, however, provides no further support for the submission that only the Consumer Data Industry Association can produce the guidelines in relation to a lawsuit. Had Defendant provided a confidentiality agreement outlining the consequences it would face for producing the guidelines in response to a court order or subpoena, the Court might be able to analyze the burden Defendant could face in producing the guidelines. Absent that, the Court is left with the fact that the guidelines have been produced under seal in other cases in this District. *See* Docket No. 42 at 19; 42-13 at 3. In light of this, Defendant has failed to meet the high standard needed to show why relevant discovery should be avoided.

Moreover, a party responding to a request for production must produce any responsive documents within the "party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The case law "clearly provides that documents are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *Apple Inc. v. Wi-LAN Inc.*, 2017 WL 11680855, at *4 (S.D. Cal. Nov. 28, 2017) (quoting *TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2017 WL 1008788, at *4 (S.D. Cal. Mar. 17, 2017)). Defendant, as a user of the Metro 2 guidelines, by necessity must have the guidelines in its custody or producible to it on demand. The Metro 2 guidelines are, therefore, discoverable under Rule 34.

Defendant has suggested that Plaintiff can obtain the Metro 2 Guideline by subpoenaing the Consumer Data Industry Association. Docket No. 42-14 at 2. This suggestion is without merit. "As a party to this case, case law dictates that [Defendant] bear the burden of production, rather than a third party." *Id.* (quoting *VirnetX, Inc. v. Apple Inc.*, 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21, 2014)). Defendant further submits that it need not produce the Metro 2 guidelines because Plaintiffs already possess the guidelines. Docket No. 47 at 9. Plaintiffs, however, possess a copy of the guidelines that predates their dispute letters. Docket No. 50 at 9. What Plaintiffs seek to compel are the guidelines that were operative at the time they submitted their dispute letters. Docket Nos. 42 at 18-19; 50 at 9-10. Plaintiffs, therefore, do not possess the iteration of the Metro 2 guidelines they seek from Defendant. Defendant must, therefore, produce the copy of the Metro 2 guidelines that was operative at the time Plaintiffs submitted their dispute letters to Defendant.

3. <u>Identification of cases, deposition transcripts, and declarations relating to Defendant's post-bankruptcy reporting and the *White v. Experian* settlement</u>

Plaintiffs further seek to compel Defendant to identify and produce any deposition transcripts, testimony, or declarations of Defendant's representative Mr. Orlowski. Docket No. 42 at 20-21. Plaintiffs also seek to compel Defendants to identify and produce any briefs or communications regarding a settlement Defendant agreed to in the case *White v. Experian*. *Id.* at 21-23. The Court declines to compel Defendant to identify or produce these categories of discovery.

As an initial matter, Plaintiffs' claims are not based around any collective action theory. Each claim is particular to each plaintiff. Given that each case presents a distinct set of facts from any other case, Mr. Orlowski's or Defendant's testimony, briefs, or communications relating to other cases cannot be relevant to Plaintiffs' claims. *See Turner v. The Paul Revere Life Ins. Co.*, No. 2:14-cv-1205-JCM-VCF, 2015 WL 5097805, at *2 (D. Nev. Aug. 28, 2015).

Plaintiffs submit, however, that these categories of discovery are necessary to respond to Defendant's forthcoming Rule 11 motion. Docket No. 42 at 20-23. To support this assertion, Plaintiffs cite to other cases where Mr. Orlowski or Defendant offered testimony or adopted a legal position that contradicts the representations made in this case. *See id.* These citations, however, show that these categories of discovery requests are duplicative. Plaintiffs already possess documents and authorities that contain the information they hope to glean from these categories of discovery. Accordingly, Defendant need not identify and produce any deposition transcripts, testimony, or declarations of Defendant's representative Mr. Orlowski or identify and produce any briefs or communications regarding a settlement Defendant agreed to in the case *White v. Experian*.

### III.   MOTION TO SEAL

Plaintiffs seek to seal Exhibits 7A, 7B, 7C, 8B, 9, 10, 11A, 11B, and 11C to their motion to compel. Docket No. 44 at 2-3. *See also* Docket Nos. 42 (motion to compel); 43 (exhibits filed under seal). Plaintiffs submit that Exhibits 7A, 7B, 7C, and 8B contain Plaintiffs' confidential financial and personal identifying information. Docket No. 44 at 3. Plaintiff submits that Exhibits 9, 10, 11A, 11B, and 11C have been designated as "Confidential" by Defendant. *Id.* Plaintiffs do not oppose the sealing of Exhibits 9, 11A, 11B, and 11C. *Id.* Notwithstanding their submission for why Exhibit 10 should be sealed, Plaintiffs oppose the sealing of this exhibit. *Id.* Plaintiffs submit that Exhibit 10 should be unsealed because it contains information similar to documents which have been publicly filed in other cases and because there is a public interest in having the contents of Exhibit 10 accessible to consumers. *Id.* at 3-5. Pursuant to this Court's orders, Docket Nos. 17 at 2; 45, Defendant filed a response to Plaintiffs' motion to seal, explaining why Exhibits 9, 10, 11A, 11B, and 11C are properly sealed. Docket No. 48. Defendant submits that Exhibits 11A, 11B, and 11C are properly sealed because they contain Plaintiffs' confidential financial and

personal identifying information as well as Defendant's trade secrets. *Id.* at 8. Defendant further submits that Exhibits 9 and 10 are properly sealed because they contain Defendant's confidential business information, the public disclosure of which would harm Defendant's competitive standing. *Id.* at 4-7.

The general presumption is that the public has the right to access judicial filings. *See, e.g.*, *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978). Certain types of documents are exempt from this presumption and have traditionally been kept secret. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Ninth Circuit "case law has identified two categories of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Id.* The presumption of public access can, however, be overcome for documents not traditionally kept secret. *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999).

In determining whether to seal documents, the applicable standard "turns on whether the materials are submitted in conjunction with a dispositive or non-dispositive motion." *Victory Sports & Ent., Inc. v. Pedraza*, 2019 WL 2578767, *1 (D. Nev. June 24, 2019). The sealing of dispositive motions and related documents is evaluated under a "compelling reasons" standard. *Kamakana*, 447 F.3d at 1179. *Id.* A party must support its motion to seal dispositive filings by "articulat[ing] compelling reasons supported by specific factual findings." *Id.* at 1178. Sealing nondispositive motions requires a "particularized showing" under a "good cause" standard. *Id.* at 1180 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003).

Exhibits 7A, 7B, and 7C are Plaintiffs' credit reports. Exhibit 8B is a set of credit denial letters from Plaintiff Kamaliha Brewster. These exhibits contain Plaintiffs' financial and personal identifying information. The Court finds that these exhibits are, therefore, subject to sealing. *See* Fed. R. Civ. P. 5.2. Exhibits 11A, 11B, and 11C are FFIs/FFRs for Plaintiffs. Though these exhibits are difficult to interpret, they also contain Plaintiffs' confidential financial and personal identifying information. Accordingly, the Court finds that good cause exists to seal Exhibits 11A, 11B, and 11C. Exhibit 9 is Defendant's Consumer Dispute and Disclosure policies. Defendant submits that public disclosure of this exhibit would allow its competitors to profit from its

confidential internal procedures and innovations and could potentially enable third parties to manipulate the credit reporting process. Docket No. 48 at 4-5. The Court is persuaded that the public disclosure of Exhibit 9 "could lead to an improper use by competitors, 'circumvent[ing] the time and resources necessary in developing [the competitor's] own practices and strategies.'" *Baker v. SeaWorld Entm't, Inc.*, 2017 WL 5029612, at *5 (S.D. Cal. Nov. 3, 2017) (quoting *Algarin v. Maybelline, LLC*, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014)); *see also Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598) ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets"). Accordingly, the Court finds that good cause exists to retain Exhibit 9 under seal.

Exhibit 10 is Defendant's User Guide, containing information on how to decode Defendant's FFIs/FFRs. Plaintiffs submit that Exhibit 10 should be unsealed because a similar document from one of Defendant's competitors has already been placed in the public record in another case. Docket No. 44 at 3. Plaintiffs further submit that Exhibit 10 should be unsealed because it contains information of vital public interest. *Id.* at 3-5. Defendant submits that a similar document being publicly disclosed in another case does not support unsealing Exhibit 10 because the broader context of the other document's public disclosure is not known. Docket No. 48 at 7. Defendant further submits that Exhibit 10 should be sealed because its public disclosure could harm Defendant's competitive standing and enable bad actors to manipulate the credit reporting system. *Id.* at 6-7.

If a court determines that a particularized harm will result from documents being publicly disclosed, the court must then "balance the public and private interests to decide whether" to seal the relevant documents. *In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips ex rel. Estate of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). Factors to be considered in this balancing process are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4)

10

whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* at n.5 (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 93d Cir. 1995)). It is the last factor that is the most relevant here. As discussed above, harm to competitive standing is a particularized harm sufficient to support the sealing of documents. Exhibit 10, Defendant's User Guide, is a highly technical document. It is unlikely that the average individual would parse through all 1700 pages of the User Guide to make the exhibit's public disclosure meaningful. Moreover, the User Guide is for interpreting FFIs/FFRs, which are only transmitted between Defendant and prospective credit grantors. *See* Docket No. 48 at 7. This further reduces the benefit that public disclosure of Exhibit 10 might provide. Accordingly, the Court finds that good cause exists to seal Exhibit 10.

### III.  CONCLUSION

For the reasons more fully discussed above, Plaintiffs' motion to compel is **GRANTED** in part and **DENIED** in part.[4] Docket No. 42. Defendant must produce the requested documents in accordance with this order no later than July 31, 2023. Also for the reasons more fully discussed above, Plaintiffs' motion to seal is **GRANTED**. Docket No. 44. The Clerk's Office is **INSTRUCTED** to retain the filing at Docket No. 43 under seal.

IT IS SO ORDERED.

Dated: July 11, 2023

_____
Nancy J. Koppe
United States Magistrate Judge

---

[4] The Court declines to award either side their fees or costs in relation to this motion.